UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK



Summons Iss'd.
U.S. DISTRICT COURT (WL)
N.D. OF N.Y.
FILED  WZ
AUG 0 1 2001
$150 Pd
LAWRENCE K. BAERMAN, CLERK
ALBANY

———————————————————————

PAUL F. MARSCH,

                          Plaintiff,

-against-

RENSSELAER COUNTY, DANIEL V. KEATING, individually and in his capacity as Rensselaer County Sheriff, COL. ROBERT LOVERIDGE, individually and in his capacity as Superintendent of Rensselaer County Corrections Department, JASON DESSINGIRE (Badge 3009), individually and in his capacity as a Sergeant employed by Rensselaer County, MARK PICHE (Badge 3006), individually and in his capacity as a Sergeant employed by Rensselaer County, JAMES SURIANO, individually and in his capacity as a Corporal employed by Rensselaer County, JASON VALENTE (Badge 3085), individually and in his capacity as a corrections officer, THOMAS SAWYER (Badge 3038), individually and in capacity as a corrections officer, CO CACHIOLI (Badge 3056), individually and in his capacity as a corrections officer, Trooper HOLOHAN, "JOHN DOE" Troopers, fictitious names, true names unknown, party or parties intended being New York State Troopers who violated the rights of plaintiff on August 2, 2000,

                          Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Civil Action No.:

**01-CV-1219**

**DNH DRH**

———————————————————————

      Plaintiff Paul F. Marsch, by and through his attorneys, Iseman, Cunningham, Riester & Hyde, LLP, as and for his Complaint against defendants, respectfully alleges as follows:

## JURISDICTION

1.   This action arises from the unlawful conduct of defendants, which violated the rights afforded plaintiff under the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. § 1983.

2.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, in that plaintiff's claims arise under federal law, and 28 U.S.C. § 1343, because plaintiff seeks to redress the deprivation by defendants and their agents, acting under color of State law and regulation, of rights afforded him under the Constitution of the United States and 42 U.S.C. § 1983.

3.   Plaintiff's claims under the New York common law arise from the same set of facts and circumstances, and form part of the same case or controversy, which give rise to his federal claims. Therefore, plaintiff invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## PARTIES

4.   At all relevant times herein, plaintiff Paul F. Marsch was a citizen of the United States, residing at 1186 Nassau Averill Park Road, Nassau, New York, 12123, located in Rensselaer County.

5.   Upon information and belief, defendant Rensselaer County (hereinafter "Rensselaer County") is a municipal corporation within the State of New York. Upon information and belief, Rensselaer County is responsible for overseeing all aspects of the administration of the Rensselaer County Jail ("the Jail").

6. Upon information and belief, at all times relevant, defendant Daniel V. Keating is the Rensselaer County Sheriff, the chief elected law enforcement officer of Rensselaer County (hereinafter "Keating"). Upon information and belief, Keating is responsible for administration of the Jail, including, but not limited to, policy-making, training and supervising Rensselaer County employees assigned to the Jail. Keating is sued individually and in his official capacity.

7. Defendant Robert Loveridge (hereinafter "Loveridge") is the Superintendent of the Rensselaer County Corrections Department and is responsible for day-to-day operation of the jail, including, but not limited to policy-making, training and supervising Rensselaer County employees assigned to work at the Jail. Loveridge is sued individually and in his official capacity.

8. Upon information and belief, defendant Jason Dessingire (Badge 3009) (hereinafter "Dessingire") is a law enforcement employee of Rensselaer County assigned to work as a supervisor of other Rensselaer County employees at the Jail. Dessingire is sued individually and in his capacity as an officer and employee of the defendants.

9. Upon information and belief, defendant Mark Piche (Badge 3006) (hereinafter "Piche") is a law enforcement employee of Rensselaer County assigned to work as a supervisor of other Rensselaer County employees at the Jail. Piche is sued individually and in his capacity as an officer and employee of the defendants.

10. Upon information and belief, defendant James Suriano (hereinafter "Suriano") is a law enforcement employee of Rensselaer County assigned to work at the Jail. Suriano is sued individually and in his capacity as an officer and employee of the defendants.

11.     Upon information and belief, defendant Jason Valente (Badge 3085) (hereinafter "Valente") is a law enforcement employee of Rensselaer County assigned to work at the Jail. Valente is sued individually and in his capacity as an officer and employee of the defendants.

12.     Upon information and belief, defendant Thomas Sawyer (Badge 3038) (hereinafter "Sawyer") is a law enforcement employee of Rensselaer County assigned to work at the Jail. Sawyer is sued individually and in his capacity as an officer and employee of the defendants.

13.     Upon information and belief, defendant Cachioli (Badge 3056) (hereinafter "Cachioli") is a law enforcement employee of Rensselaer County assigned to work at the Jail. Cachioli is sued individually and in his capacity as an officer and employee of the defendants.

14.     Upon information and belief, defendant Trooper Holohan (hereinafter "Holohan") is a law enforcement employee of the New York State Police. Holohan is sued individually.

15.     Upon information and belief, the "John Doe" defendants were employees of the New York State Police whose identities are currently unknown to plaintiff (hereinafter referred to collectively as the "John Doe" Troopers).

16.     Upon information and belief, the "John Doe" Troopers participated in the arrest of plaintiff and violated his rights on August 2, 2000. The "John Doe" Troopers are sued individually.

## FACTS

<u>Violation of Plaintiff's Rights
During His Arrest</u>:

17.    On August 2, 2000, at approximately 1:30 PM, plaintiff and his 13-year-old son returned to their home at 1186 Nassau Averill Park Road, in Nassau, New York, after a morning of shopping.

18.    After pulling into the driveway, plaintiff was confronted by several New York State Police Troopers who had a warrant to search plaintiff's home for illegal firearms.

19.    Upon information and belief, law enforcement officers from, among other agencies, the New York State Police and the Rensselaer County Sheriff's Office conducted and/or were present at the search of plaintiff's home.

20.    Through the search, the Troopers located only a "prop" Thompson submachine gun that had been purchased from the manufacturer as a toy and is completely inoperable. Upon information and belief, no illegal firearms were found in plaintiff's residence, and no charges were filed as a result of the search.

21.    After the fruitless search was complete, one of the New York State Police Troopers present for the search informed plaintiff that he had a warrant for plaintiff's arrest. The arrest warrant was completely unrelated to the search warrant. The arrest warrant purported to relate to an alleged domestic incident between plaintiff and his 16-year-old daughter that occurred on July 30, 2000.

22.    Holohan and several of the "John Doe" Troopers, proceeded to arrest plaintiff and attempted to handcuff him by placing his hands behind his back.

23. Plaintiff objected to the method used by Holohan and the "John Doe" Troopers to cuff him.

24. Plaintiff advised Holohan and the "John Doe" Troopers that, as a result of an industrial accident, plaintiff suffered from a physical disability that prevented him from putting his hands and arms behind his back.

25. Plaintiff showed Holohan and the arresting "John Doe" Troopers the extensive surgical scarring on both arms as evidence of the existence of his disability.

26. Plaintiff requested that his hands be cuffed in front to avoid further injury and discomfort to his arms.

27. Upon information and belief, the nature and extent of plaintiff's disability and the resulting physical limitations were separately reported and described to the New York State Police by plaintiff's daughter when she communicated with one of the "John Doe" Troopers about the alleged incident of July 30, 2000.

28. By reason of the foregoing, Holohan and the other "John Doe" Troopers knew or should have known of the nature of plaintiff's disabilities before they arrested him.

29. Notwithstanding plaintiff's objection to defendants' attempts at handcuffing him from the rear, and ignoring prior reports of plaintiff's physical disabilities and limitations, Holohan and the other "John Doe" Troopers deliberately and violently forced plaintiff's arms to the rear of his torso, handcuffed his hands, and proceeded to "jack" plaintiff's arms into a painful position behind his upper back.

30.     Because of plaintiff's physical disability, he was unable to stand straight with his arms cuffed behind his back. As a result, he became distraught and fell to the ground, overcome with pain and was unable to comply with the demands of the arresting Troopers.

31.     Holohan and the other "John Doe" Troopers ignored plaintiff's cries of pain and picked him up from the rear by his cuffed wrists.

32.     Holohan and several of the "John Doe" Troopers thereafter punched plaintiff about the abdomen and torso.

33.     Holohan and several of the "John Doe" Troopers then forcibly pushed plaintiff into the police car in a forward facing position.

34.     Upon information and belief, the force used by Holohan and the "John Doe" Troopers to arrest and detain plaintiff was excessive and unnecessary in light of the circumstances presented and was unjustified by any legitimate law enforcement objective.

35.     As a result of the excessive force used by Holohan and the "John Doe" Troopers, and their refusal to acknowledge or accommodate plaintiff's physical disability, plaintiff was injured and was caused to suffer extreme mental anguish, pain and discomfort during the course of his arrest, and during transportation from his home to State Police offices.

36.     Upon information and belief, at no point in time before, during or after the arrest, or during the search of his home, did any law enforcement officer read plaintiff his Miranda Rights.

37.     Upon information and belief, at no point in time during or after his arrest by Holohan and the other "John Doe" Troopers was plaintiff offered the assistance of counsel or given the opportunity to make a phone call to secure counsel.

38.     Plaintiff was escorted to the Nassau Town Court in a State Police car with two of the "John Doe" Troopers, and was later transported to the Jail.

Violation of Plaintiff's Rights
At the Rensselaer County Jail:

39.     Upon arriving at the Jail, plaintiff was placed in the custody of Rensselaer County employees.

40.     Plaintiff informed the Rensselaer County employees at the Jail that he was in extreme pain as a result of his physical disability and the placement of his hands behind his back.

41.     Plaintiff asked to be released from the handcuffs.

42.     Plaintiff's request to be released from the handcuffs was denied.

43.     Plaintiff asked for the assistance of counsel.

44.     Plaintiff's request for the assistance of counsel was denied.

45.     Upon information and belief, Piche participated in the processing or "booking" of plaintiff.

46.     Because he had not been advised of his Miranda Rights nor given the opportunity to consult with counsel or make any personal phone calls, plaintiff refused to answer the questions put to him during the booking process.

47.     Plaintiff once again requested a phone call so that he could consult with an attorney.

48.     Plaintiff's request to make a phone call so that he could consult with an attorney was once again denied.

49. Upon information and belief, Piche and/or Dessingire ordered that plaintiff be placed in a holding cell.

50. Upon information and belief, Sawyer and Valente escorted plaintiff to the holding cell and removed his leg irons and cuffs.

51. While detained in the holding cell, defendants, including Sawyer and Piche, accused plaintiff of being a "child molester" and "cop hater."

52. Sawyer and Valente made threats directed at plaintiff, suggesting physical retaliation was forthcoming.

53. Thereafter, Dessingire approached the holding cell with a canine unit.

54. As Dessingire approached the holding cell with the canine unit, he was followed by several of the other defendants.

55. Sawyer, Valente and Suriano entered the cell with Dessingire and the canine unit directly behind them.

56. Sawyer, Valente, Suriano and Dessingire entered plaintiff's cell wearing helmets with face shields and carrying batons.

57. Plaintiff immediately retreated to the back of the cell.

58. Sawyer, Valente and Suriano entered the cell and pushed plaintiff on his back on a cot with his face up.

59. Sawyer, Valente and Suriano then immobilized plaintiff.

60. Sawyer, Valente and Suriano then proceeded to repeatedly strike plaintiff about the head, jaw, throat, torso, abdomen and stomach with batons.

61.     As plaintiff was being struck, one of the defendants held plaintiff's legs, another held his head, while the third struck the plaintiff.

62.     As they were repeatedly striking plaintiff, Sawyer, Valente and Suriano threatened and insulted plaintiff.

63.     Upon information and belief, Dessingire remained in or near the holding cell and witnessed the entire altercation.

64.     Upon information and belief, Dessingire made no attempt to intervene or stop the beating.

65.     Upon information and belief, Piche and Cachiolo also supervised, authorized, participated in and/or witnessed the beating, but failed to intervene.

66.     Plaintiff repeatedly lost consciousness from the beating and was in excruciating pain as a result of injuries he sustained to his head, jaw and neck.

67.     Following the assault, he requested, and ultimately received, medical attention at Samaritan Hospital in Troy, New York.

68.     As a result of the beating that occurred at the Rensselaer County Jail, plaintiff suffered bilateral mandible fractures of both sides of his jaw, and contusions to his neck and abdomen.  The plaintiff's multiple jaw fractures were open and displaced, causing bone to protrude from plaintiff's mouth and several teeth to become dislodged from his jaw.  Plaintiff underwent corrective surgery later that day, and was hospitalized for approximately four (4) days.

69.     Since the beating, plaintiff has undergone numerous dental procedures and surgery, and has lost seven (7) teeth as a result of the trauma to his jaw.  Plaintiff has suffered

severe and permanent damage to his face, jaw and teeth as a result of the beating administered by defendants at the Jail.

### AS AND FOR A FIRST FEDERAL CAUSE OF ACTION
### AGAINST DEFENDANT HOLOHAN AND THE "JOHN DOE" TROOPERS
*(Excessive Force During Arrest)*

70. Plaintiff repeats and reiterates the allegations contained in paragraphs 1 through 69 with the same force and effect as if each was set forth at length herein.

71. The actions and omissions described herein, engaged in under the color of state law, deprived plaintiff of his right to be free from unlawful seizures as secured to him by the Constitution of the United States under the Fourth and Fourteenth Amendments.

72. Holohan and the "John Doe" Troopers deprived plaintiff of these rights in that they knew of plaintiff's physical disability and resulting physical limitations, but nonetheless used excessive force during the course of his arrest on August 2, 2000.

73. Upon information and belief, as a result of the defendants' violation of plaintiff's constitutional rights, plaintiff suffered severe physical injuries and extreme emotional anguish and was damaged thereby.

### AS AND FOR A SECOND FEDERAL CAUSE OF ACTION AGAINST
### DEFENDANTS RENSSELAER COUNTY, KEATING, LOVERIDGE,
### DESSINGIRE, PICHE, SURIANO, VALENTE, SAWYER AND ACHIOLI
*(Excessive Force During Pre-Trial Detention)*

74. Plaintiff repeats and reiterates the allegations contained in paragraphs 1 through 73 with the same force and effect as if each was set forth at length herein.

75. The actions and omissions described herein, engaged in under the color of state law, deprived plaintiff of his right to be free from unlawful seizures, his right to due process and

his right to be free from cruel and unusual punishment as afforded to him by the Constitution of the United States under the Fourth, Eighth and/or Fourteenth Amendments.

76. Sawyer, Valente and Suriano deprived plaintiff of these rights by personally using excessive force, to wit, by beating him severely about the head, jaw, torso, etc. during his pre-trial detention at the Jail on August 2, 2000.

77. Dessingire, Piche and Cachioli deprived plaintiff of these rights in that they participated and/or assisted in the planning of the assault upon plaintiff, were grossly negligent in supervising Sawyer, Valente and Suriano, and/or exhibited deliberate indifference to the rights of plaintiff in failing to take steps to prevent the violation of plaintiff's constitutional rights.

78. Upon information and belief, Keating, Loveridge and Rensselaer County deprived plaintiff of these rights in that they created, promoted or permitted a policy or custom to exist at the Jail pursuant to which unconstitutional practices were promoted, sanctioned and allowed to continue.

79. Upon information and belief, Keating, Loveridge and Rensselaer County deprived plaintiff of his constitutional rights by causing, permitting or tolerating policies, customs or practices of unconstitutional behavior at the Jail, which are known generally in the community and publicized through the media, of which the Rensselaer County and the Jail should have been aware and prevented.

80. Upon information and belief, Keating, Loveridge, Rensselaer County, Dessingire, Piche and Cachioli further ratified and condoned the actions of Sawyer, Valente and Suriano by failing to conduct an adequate investigation into the circumstances of plaintiff's assault, and in failing to follow existing procedures for reporting and investigating such incidents.

81. Keating, Loveridge and Rensselaer County further ratified and condoned such policies, customs and practices by failing to take any appropriate disciplinary measures against any of the defendants who were responsible for, or participated in, the assault upon plaintiff.

82. Upon information and belief, Keating, Loveridge, Rensselaer County, Dessingire, Piche and Cachioli were grossly negligent in supervising the defendants who assaulted the plaintiff.

83. Keating, Loveridge and Rensselaer County deprived plaintiff of his constitutional rights by failing to properly train Sawyer, Valente and Suriano regarding safe and proper restraint practices that would have avoided the infliction of the permanent and severe injuries suffered by plaintiff Paul Marsch.

84. Upon information and belief, as a result of the defendants' violation of plaintiff's constitutional rights, plaintiff suffered severe physical injuries and extreme emotional anguish and was damaged thereby.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS HOLOHAN AND THE "JOHN DOE" TROOPERS PURSUANT TO NEW YORK STATE LAW
*(Assault and Battery)*

85. Plaintiff repeats and reiterates the allegations contained in paragraphs 1 through 84 with the same force and effect as if each was set forth at length herein.

86. The acts and conduct complained of herein constitute assault and battery under the laws of the state of New York, in that Holohan and the "John Doe" Troopers intentionally placed plaintiff in fear of imminent harmful or offensive contact, and actually engaged in wrongful physical contact without plaintiff's consent during the course of his arrest on August 2, 2000.

87.     As a result of the assault by defendants, plaintiff sustained severe and permanent physical injuries as well as extreme emotional distress and psychological injury.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS RENSSELAER COUNTY, LOVERIDGE, KEATING, DESSINGIRE, PICHE, SURIANO, VALENTE, SAWYER AND CACHIOLI PURSUANT TO NEW YORK STATE LAW
*(Assault and Battery)*

88.     Plaintiff repeats and reiterates the allegations contained in paragraphs 1 through 87 with the same force and effect as if each was set forth at length herein.

89.     On or about October 24, 2000, plaintiff served an Amended Notice of Claim and Notice of Intention to Commence Action on defendants Keating, Rensselaer County, and officers whose identities at the time were unknown but have subsequently been identified as the defendants named herein.

90.     Upon information and belief, more than 90 days have elapsed since the notices were served upon Keating and Rensselaer County, and adjustment and payment of plaintiff's claims has been refused and/or neglected by said defendants.

91.     Upon information and belief, plaintiff has satisfied all applicable conditions precedent to suit pursuant to the New York General Municipal Law.

92.     Upon information and belief, the assault committed by Sawyer, Valente and Suriano upon plaintiff during his incarceration at the Jail was conducted within the scope of their employment as correction officers by Rensselaer County and was aided and abetted by Dessingire, Piche and Cachioli.

93.     Upon information and belief, Rensselaer County, Sheriff Keating and Superintendent Loveridge are legally responsible for the acts of the employees working under

their supervision and/or control, and pursuant to the doctrines of *respondeat superior* and non-delegable duty. They are therefore liable for the damages sustained by plaintiff.

94. As a result of the assault by defendants, plaintiff sustained severe and permanent physical injuries, as well as extreme emotional distress and psychological injury.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS PURSUANT TO NEW YORK STATE LAW
*(Intentional Infliction of Emotional Distress)*

95. Plaintiff repeats and reiterates the allegations contained in paragraphs 1 through 94 with the same force and effect as if each was set forth at length herein.

96. The wrongful conduct of the defendants, as described above, was directed at plaintiff and caused plaintiff severe emotional distress and psychological injury, and was either intended to cause severe emotional distress or was perpetrated with a reckless indifference to the likelihood that it would cause such distress.

97. This extreme and outrageous conduct exceeded the bounds of decency tolerated by the State of New York, and the defendants are, therefore, liable to plaintiff in the amount of $1,000,000.00 for the emotional distress intentionally inflicted upon him.

WHEREFORE, plaintiff Paul F. Marsch respectfully prays that this Court grant the following relief:

(a)  judgment against defendants Holohan and "John Doe" Troopers awarding to plaintiff damages in the amount of $1,000,000 on the first cause of action;

(b)  judgment against defendants Keating, Rensselaer County, Loveridge, Dessingire, Piche, Sawyer, Valente, Suriano and Cachiolo awarding to plaintiff damages in the amount of $2,000,000 on the second cause of action;

(c) judgment against defendants Holohan and "John Doe" Troopers awarding to plaintiff damages in the amount of $1,000,000 on the third cause of action;

(d) judgment against defendants Keating, Rensselaer County, Loveridge, Dessingire, Piche, Sawyer, Valente, Suriano and Cachiolo awarding to plaintiff damages in the amount of $2,000,000 on the fourth cause of action;

(e) judgment against all defendants awarding to plaintiff damages in the amount of $1,000,000 on the fifth cause of action;

(e) judgment directing defendants to pay plaintiff the costs, disbursements and reasonable attorneys' fees he has incurred, pursuant to 42 U.S.C. § 1988;

(f) an award of $5,000,000 in punitive damages; and

(g) such other and further relief as this Court deems just and proper.

Plaintiff demands a jury trial of this action.

DATED:   August 1, 2001

ISEMAN, CUNNINGHAM, RIESTER & HYDE, LLP

*Linda J. Clark*

Linda J. Clark
Bar Roll No.: 301522
Attorneys for Plaintiff Paul F. Marsch
Office and P.O. Address
9 Thurlow Terrace
Albany, New York   12203
(518) 462-3000